E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
RAJESH R. SRINIVASAN (Cal. Bar No. 310510)
Assistant United States Attorney
General Crimes Section
1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, CA 90012
    Telephone: (213) 894-2426/7416
    Facsimile: (213) 894-0142
    E-mail: Daniel.Boyle2@usdoj.gov
         Rajesh.Srinivasan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-242-FLA |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | |
| FRANCISCO OSORIO, | Trial Date: September 27, 2022 Trial Time: 8:30 AM Location: Courtroom of the Hon. Fernando L. Aenlle-Rocha |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Dan Boyle and Rajesh Sriniviasan, hereby files its Trial Memorandum.

//

//

1

Leave is respectfully requested to file additional memoranda as may become appropriate during the course of trial.


Dated: September 19, 2022          Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                   _____/s/_____
                                   DAN G. BOYLE
                                   RAJESH SRINIVASAN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

**GOVERNMENT'S TRIAL MEMORANDUM**................................... 1

**I.    STATUS OF THE CASE**.......................................... 1

    A.    Factual Summary........................................... 1

    B.    Charges & Elements........................................ 4

    C.    Trial Status............................................. 5

    D.    Pretrial Status of Defendants........................... 6

    E.    Government's Case-in-Chief Witnesses.................. 6

    F.    Motions in Limine........................................ 7

    G.    Stipulations............................................. 7

    H.    Trial Indictment......................................... 8

    I.    Forfeiture Allegation.................................... 8

**I.    EVIDENTIARY ISSUES**.......................................... **8**

    A.    Authentication and Foundation........................... 8

        1.    Video Recordings................................. 9

        2.    Photographs...................................... 9

        3.    Physical Evidence............................... 10

    B.    Hearsay and Exceptions to Hearsay.................... 11

        1.    Defendants' Statements as Admissions of a Party Opponent........................................ 11

    C.    Expert and Lay Opinion Testimony..................... 12

        1.    NARA and Federal Register Procedures and Seals... 12

        2.    Lay Opinion of Law Enforcement Agents........... 13

    D.    Cross-Examination of Defendants and Defense Witnesses. 14

    E.    Affirmative Defenses.................................... 16

    F.    Reciprocal Discovery.................................... 16

**II.   CONCLUSION**................................................. **17**

**TABLE OF AUTHORITIES**

Cases

United States v. Bailleux,
  685 F.2d 1105 (9th Cir. 1982) ...................................15

United States v. Black,
  767 F.2d 1334 (9th Cir. 1985) ...................................14

United States v. Chu Kong Yin,
  935 F.2d 990 (9th Cir. 1991) .....................................9

United States v. Cuozzo,
  962 F.2d 945 (9th Cir. 1992) ....................................14

United States v. Dhinsa,
  243 F.3d 635 (2d Cir. 2001) ......................................8

United States v. Freeman,
  498 F.3d 893 (9th Cir. 2007) ....................................13

United States v. Gay,
  967 F.2d 322 (9th Cir. 1992) .................................14, 15

United States v. Godfrey,
  787 F.3d 72 (1st Cir. 2015) ......................................5

United States v. Hadley,
  918 F.2d 848 (9th Cir. 1990) ....................................15

United States v. Hegwood,
  977 F.2d 492 (9th Cir. 1992) ....................................16

United States v. King,
  587 F.2d 956 (9th Cir. 1978) .....................................9

United States v. Mendoza-Prado,
  314 F.3d 1099 (9th Cir. 2002) ...................................16

United States v. Reid,

  634 F.2d 469 (9th Cir. 1980) ....................................15

United States v. Smith,

  591 F.3d 974 (8th Cir. 2010) ....................................9

United States v. Tolley,

  749 F. App'x 865 (11th Cir. 2018) ...............................5

Statutes

18 U.S.C. § 1017............................................4

18 U.S.C. § 506.............................................4

18 U.S.C. § 912.............................................4

Rules

Fed. R. Evid. 702..........................................12

Fed. R. Evid. 801(c).....................................11, 12

Fed. R. Evid. 801(d)(2)(A)..................................11

Fed. R. Evid. 901(a)........................................8

## GOVERNMENT'S TRIAL MEMORANDUM

I.   **STATUS OF THE CASE**

    **A.   Factual Summary**

    The Government expects that the evidence presented in its case in chief at trial will establish the following:

    In or about August of 2018, the California Department of Transportation ("Caltrans") held title to a commercial property at 16500 Valley View Avenue in La Mirada, California (the "La Mirada Property"). The La Mirada Property was a former commercial building initially purchased by Caltrans for potential right-of-way access to facilitate a planned roadway expansion, although Caltrans subsequently determined that the roadway expansion would not require demolition of the La Mirada Property for right-of-way purposes. Caltrans-owned right-of-way properties are typically boarded up, secured, and marked with "No Trespassing" signs, as the costs of demolition are sufficiently high that it rarely makes financial sense to demolish a property before it becomes clear that Caltrans will actually need the property cleared for a right of way.

    Beginning in August of 2018, Caltrans employees began encountering defendant Francisco Osorio ("defendant") at the La Mirada Property wearing clothing emblazoned with what appeared to be government seals, and driving a White Nissan Vehicle (the "Nissan Vehicle") which had signage affixed to it also bearing apparent government seals and referring to the Federal Register. During encounters with at least two Caltrans employees, defendant demanded to know the Caltrans employees' business at the La Mirada Property, and would claim that he was a federal employee and that the Caltrans

personnel were trespassing on federal property. When Caltrans
personnel requested that defendant provide some form of federal
identification, defendant would refuse to do so.

Caltrans personnel noticed in subsequent visits to the La
Mirada Property that, while the property had previously been boarded
up and secured, there were now a number of workers at the La Mirada
Property conducting what appeared to be remodeling. The Caltrans "No
Trespassing" signs had also been covered up with notices purportedly
from the Federal Register. The words "Federal Register" had also
been spray-painted on the building in multiple places.  Caltrans
employees contacted California Highway Patrol ("CHP") who arrived
and directed the workers to leave.

CHP officers inspected the inside of the La Mirada Property and
saw tools and equipment. The CHP officers spoke to the individual
leading the renovation work, Cecelio Bailong, who stated that he had
been sent to the property by defendant and directed to renovate the
building. Bailong stated that defendant had told Bailong that he
(defendant) owned the La Mirada Property, and if Bailong renovated
the property, he (Bailong) could use the property for his
congregation's services for free. Bailong also stated to the CHP
officers that defendant had spray-painted "Federal Register" on the
building and had posted the "Federal Register" notices on the
outside of the building. Bailong also showed the CHP officers a
business card defendant had given to him, which featured the
National Archives and Records Administration ("NARA") seal and
stated "Federal Register."

On or about the same date CHP Officer Adams spoke to defendant by phone, after asking Bailong to contact defendant. On that call, defendant identified himself and stated that he worked for the federal government and told Officer Adams to stop harassing the workers on what defendant described as his property. When Officer Adams stated that the property belonged to the Caltrans, defendant responded that the state did not have jurisdiction because the land was federal property. Defendant stated, however, that he would only provide proof of his ownership or federal status in court, and threatened to sue Officer Adams in state court.

Over the next three months, CHP was repeatedly called to the La Mirada Property to evict Bailong and his congregation and to attempt to remove property and construction equipment Bailong had left at the site. In most instances, Bailong or members of his congregation stated to responding CHP officers that defendant had told them the dispute with the state was cleared up or that defendant owned the property, and gave them permission to remain there. CHP also repeatedly found purported "Federal Register" notices affixed to the La Mirada Property during this time period.  CHP and Caltrans employees also repeatedly found locks at the La Mirada Property had been cut and replaced with non-Caltrans locks and chains.

Caltrans ultimately demolished the La Mirada Property, even though it had decided in the interim to sell the property in lieu of destruction. The continuing issues raised by intrusions at the property led Caltrans to incur costs for 24-hour security on the property, and ultimately, to believe that the property could not be sold profitably.

On or about November 20, 2018, defendant called a CHP office regarding the La Mirada Property, and recorded this call, which defendant apparently posted to YouTube on or about January 2, 2019. In the video of that call, defendant can be seen and heard identifying himself, referring to the La Mirada Property, and saying that "I work for the federal government" and referring to the La Mirada Property as "federal property, it's on record already."

**B.   Charges & Elements**

On May 18, 2021, a federal grand jury returned a three-count indictment against defendant.  The indictment charged defendant with one count each of violating 18 U.S.C. § 912 (False Impersonation of a Federal Officer and Employee); 18 U.S.C. § 506(a)(3) (Possession of Fraudulent Seals of Departments and Agencies of the United States); and 18 U.S.C. § 1017 (Wrongful Use and Transfer of Documents Bearing Fraudulent Government Seals). These elements of these offenses are as follows:

For Count One:

1. Defendant falsely pretended to be an officer or employee acting under the authority of the United States National Archives and Records Administration; and

2. Defendant acted as such.

See Ninth Circuit Criminal Model Jury Instructions, No. 24.9 [False Impersonation of Federal Officer or Employee] (modified to reflect facts of the case).

For Count Two:

1. Defendant possessed a falsely made, forged, or counterfeit seal, or a copy of a public seal;

4

2. The seal was of a department or agency of the United
States, specifically, the United States National Archives
and Records Administration; and

3. Defendant possessed the seal with the intent to defraud,
that is, the intent to deceive and cheat.

See United States v. Tolley, 749 F. App'x 865, 867 (11th Cir. 2018);
intent element modified from Ninth Circuit Criminal Model Jury
Instructions, No. 15.35 (Wire Fraud).

For Count Three:

1. Defendant fraudulently or wrongfully affixed a government
seal to a document or paper, or the defendant used a
document or paper fraudulently or wrongfully affixed with
a government seal, specifically, the seal of the United
States National Archives and Records Administration;

2. Defendant knew that the government seal had been
fraudulently or wrongfully affixed to the document, and

3. Defendant acted with the intent to defraud, that is, the
intent to deceive and cheat.

See United States v. Figueroa, SACR 13-156, 2016 WL 1253318
(C.D.Cal., February 25, 2016) (modified to facts of case); United
States v. Godfrey, 787 F.3d 72, 80 (1st Cir. 2015); intent element
modified from Ninth Circuit Criminal Model Jury Instructions, No.
15.35 (Wire Fraud).

**C.   Trial Status**

Trial is set to commence on September 27, 2022.  Trial by jury
has not been waived.

1   **D.    Pretrial Status of Defendants**

2   Defendant is detained pending trial.

3   **E.    Government's Case-in-Chief Witnesses**

4   The estimated time for the presentation of the government's

5   case-in-chief is approximately two-to-three days.  This includes the

6   estimated time for cross-examination of the government's witnesses.

7   The government expects to call nine witnesses:

8   1.    Elizabeth Ware, a Caltrans Employee who is expected

9   to testify to her interactions with defendant and to authenticate

10  certain exhibits.

11  2.    Kinikki Guy, another Caltrans Employee who is also

12  expected testify to her interactions with defendant and to

13  authenticate certain exhibits.

14  3.    Brian Adams, a CHP Officer who is expected testify to

15  his interactions with defendant, evidence he collected as part of

16  his investigation, and to authenticate certain exhibits.

17  4.    Cecilio Bailong, a civilian witness who is expected

18  testify to his interactions with defendant regarding the La Mirada

19  Property.

20  5.    Abel Catalan, a civilian witness who is expected

21  testify to his interactions with defendant regarding the Nissan

22  Vehicle.

23  6.    Dan Murdoch, a Caltrans Employee who is expected to

24  testify to Caltrans' response to defendant's actions, the impact on

25  Caltrans, and to authenticate certain exhibits.

26

27

28

7.    Jimmy Li, a Caltrans Employee who is expected to testify to Caltrans' response to defendant's actions and to authenticate certain exhibits.

8.    Miriam Vincent, a NARA Staff Attorney who is expected to testify to the functions of NARA, the federal register, and the relevant governmental seals, and to provide testimony regarding the purported federal register notices offered into evidence.

9.    David Stupar, a NARA-OIG Special Agent and the case agent, who is expected to testify to his investigation into defendant's claimed federal employment status, and to authenticate certain exhibits.

**F.    Motions _in Limine_**

Concurrent with this Trial Memorandum,[1] the government is filing one motion _in limine_ (the "MIL") seeking to admit certain evidence and testimony, and permit argument as to the same, as inextricably intertwined evidence. Specifically, the MIL seeks to admit testimony from bailing regarding his interactions with defendant regarding the La Mirada Property, and to admit one exhibit, which is a copy of a purported small claims lawsuit filed by defendant against Caltrans and Dan Murdoch.

**G.    Stipulations**

The parties do not anticipate filing any evidentiary stipulations.

---

[1] The government recognizes that the Court's standing criminal trial order requires Motions in Limine to be filed at least 28 days before the final pretrial conference, and thus, the government's MIL is technically late. The government had prepared its filings here based on the standing order of the prior judge before this matter was transferred, however, which did not include the same filing schedule. The government apologizes for any confusion or delay.

### H.   Trial Indictment

Concurrent with this Trial Memorandum, the government has prepared a proposed Trial Indictment, which has been shred with counsel for defendant. This Trial Indictment makes two primary substantive revisions:

- First, the Trial Indictment removes surplusage from Count One because the government has elected to proceed solely on the first prong of 18 U.S.C. § 912; and

- Second, the Trial Indictment removes the forfeiture allegations, as the government does not intend to seek forfeiture of any property in the event of conviction.

### I.   Forfeiture Allegation

As noted above, the government does not anticipate seeking to forfeit any property in a forfeiture phase of trial (in the event of a conviction on one or more counts).

## I.   EVIDENTIARY ISSUES

### A.   Authentication and Foundation

Federal Rules of Evidence require that a proponent of evidence make a *prima facie* showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is." Fed. R. Evid. 901(a); United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991).  This requirement "does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." United States v. Dhinsa, 243 F.3d 635, 658-59 (2d Cir. 2001) (citations omitted).  The government need make only a

prima facie showing of authenticity.  Chu Kong Yin, 935 F.2d at 996.
The government may need to authenticate certain types of exhibits,
including the following categories of evidence.

      1.  Video Recordings

    The government will introduce two video recordings, one of
which was taken by witness K. Guy during an interaction with
defendant, and one which was publicly available on Youtube and
discovered and retrieved by SA Stupar during his investigation.

    A recording is admissible upon a showing that it is "accurate,
authentic, and generally trustworthy." United States v. King, 587
F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a
recording depicts what the witness observed is sufficient to
authenticate the recording. See Fed. R. Evid. 901(b)(1); United
States v. Smith, 591 F.3d 974, 979-80 (8th Cir. 2010).  Witnesses
involved in the events depicted may also have knowledge of how the
recordings were made or collected.  They are therefore qualified to
testify about who can be seen and heard in the recordings.  Fed. R.
Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th
Cir. 1990) ("Testimony of voice recognition constitutes sufficient
authentication.").

    The government has provided notice to defendant of what
recordings it may seek to admit at trial and provided the defense
with these recordings.

      2.  Photographs

    The government intends to offer a number of photographs,
including, among other things, photos taken by certain witnesses of
the La Mirada Property, including of the defendant at that location.

Photographs may be authenticated by a witness who "identif[ies] the scene itself [in the photograph] and its coordinates in time and place." Lucero v. Stewart, 892 F.2d 52, 55 (9th Cir. 1989).  It is not necessary to have the photographer establish the foundation for the photograph.  Any person sufficiently familiar with the area in the photograph can be the proponent of the photograph.  Id.; see also United States v. Henderson, 241 F.3d 638, 650 (9th Cir. 2000) ("A lay witness may give an opinion regarding the identity of an individual depicted in a photograph provided the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.").

### 3.   Physical Evidence

The government also intends to offer physical evidence in the form of postings and signage recovered at the La Mirada Property by investigating CHP officers.

To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. The Court may admit the evidence if there is "a reasonable probability the article has not been changed in important respects." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991). Factors the Court may consider in making this determination include the nature of the item, the circumstances surrounding its preservation, and the likelihood of intermeddlers having tampered with it.  See United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981).  In establishing chain of custody as to an item of physical evidence, the government is not required to call all persons who may have come into contact with the piece of evidence.  Reyes v. United

States, 383 F.2d 734 (9th Cir. 1967).  Moreover, a presumption of regularity exists in the handling of exhibits by public officials. Kaiser, 660 F.2d at 733.

**B.   Hearsay and Exceptions to Hearsay**

The government also intends to offer a video clip of defendant during a phone conversation with CHP officers. This video clip, which was publicly available on Youtube, depicts defendant on a phone call with a CHP officer, discussing the La Mirada Property.

1.   Defendants' Statements as Admissions of a Party Opponent

Hearsay is an out of court declarant's statement that a party offers in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Statements by a party opponent when offered against that party are excluded from the hearsay definition.  Fed. R. Evid. 801(d)(2)(A); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).  Defendant's statements during the course of his call with the CHP officer are not hearsay when offered against the defendant because they are statements by a party-opponent.  Fed. R. Evid. 801(d)(2)(A).

However, defendant cannot admit his own out of court statements unless a hearsay exception applies.  Nor does the "rule of completeness" under Rule 106 allow defendant to circumvent the hearsay exception requirement even where the government has admitted segments of a conversation without including the entire conversation. See Fed.R.Evid. 106.

In addition, statements that provide context to defendant's statements, specifically, statements by the CHP Officer during his

11

discussion with defendant, are also admissible as such statements are not being offered for the truth of the matter asserted but rather to provide context for the defendants' statements.  Fed. R. Evid. 801(c); see also United States v. Barragan, 871 F.3d 689, 705 (9th Cir. 2017) ("[T]he informant's statements on the tapes were not hearsay because, as the court instructed the jury, they were offered only for context, not for 'the truth of the matter asserted.'").

### C.   Expert and Lay Opinion Testimony

The government has provided disclosure to defendant concerning one areas of potential expert testimony under Federal Rule of Criminal Procedure 16(a)(1)(G), namely, the testimony of NARA Staff Attorney Miriam Vincent.  If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed. R. Evid. 702.

#### 1.   NARA and Federal Register Procedures and Seals

The government intends to call NARA Staff Attorney Miriam Vincent to testify regarding the purported Federal Register notices which were found at the La Mirada Property and which will be introduced into evidence. The government expects that Ms. Vincent will testify to (1) the functions of the Federal Register, (2) the presence of the NARA seal on these documents, and (3) the validity of these purported documents. The government has disclosed Ms. Vincent to the defense and provided a copy of her CV.

## 2.   Lay Opinion of Law Enforcement Agents

The government may elicit lay opinion testimony by law enforcement agents and/or government witnesses, primarily through the NARA-OIG Special Agent David Stupar.

For example, SA Stupar will introduce and testify about a video recording which he discovered publicly-available during his investigation, which may contain references or terms vague or unfamiliar to a lay person.  Federal Rule of Evidence 701 provides that, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Thus, under Ninth Circuit law, an officer's interpretation of intercepted calls or code words, for example, is admissible lay opinion because it is based on the officer's "direct knowledge of the investigation."  See United States v. Freeman, 498 F.3d 893, 902, 904-05 (9th Cir. 2007) ("A lay witness may provide opinion testimony regarding the meaning of vague or ambiguous statements [in recorded conversations]").  "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." United States v. Gadson, 763 F.3d 1189, 1208 (9th Cir. 2014).  But a lay opinion witness "may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements." United States v. Vera, 770 F.3d

1232, 1242 (9th Cir. 2014).  Lay witness testimony is "even if the testifying officer was not a participant in the recorded conversation."  Gadson, 763 F.3d at 1207.  Here, SA Stupar's understanding as to the terms discussed in the recording will be based on his direct knowledge of the investigation and understanding of the context of the statements.  Therefore, law enforcement lay opinion testimony should be admissible at trial.

### D.   Cross-Examination of Defendants and Defense Witnesses

#### 1.   Scope of Cross-Examination

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  The scope of a defendant's waiver is coextensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); see also United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted).

#### 2.   Other Act Evidence

Defendant's credibility will be crucial if defendant chooses to testify.  Rule 404(b) does not proscribe the use of other act evidence as an impeachment tool during cross-examination.  United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1992).  Thus, cross-examination about other possible untruthful conduct in which either

1    defendant may have engaged is necessary for the jury to weigh

2    whether his testimony is credible.  In addition, Rule 608(b)

3    "specifically contemplates inquiries into prior behavior in order to

4    challenge a witness's credibility.  Evidence of prior frauds is

5    considered probative of the witness's character for truthfulness or

6    untruthfulness."  Id.; see also United States v. Reid, 634 F.2d 469,

7    474 (9th Cir. 1980) ("The fact that appellant made the false

8    statements [in a letter] eight years prior to trial did not destroy

9    the relevance of the statements for impeachment purposes.").

10        Moreover, the prejudicial effect of such evidence, if any, can

11   be addressed by a limiting instruction.  Gay, 967 F.3d at 328.  "All

12   evidence which tends to establish the guilt of a defendant is, in

13   one sense, prejudicial to that defendant, but that does not mean

14   that such evidence should be excluded."  United States v. Bailleux,

15   685 F.2d 1105, 1111 (9th Cir. 1982).  Admission of evidence

16   regarding the defendant's other acts might only constitute unfair

17   prejudice if the jury in this case considered the evidence to

18   establish a defendant's propensity to commit the charged crime.

19   However, this potential unfair prejudice can be cured by a limiting

20   instruction that the jury should consider the evidence only for the

21   purpose for which it is introduced.  Gay, 967 F.3d at 328.

22        3.   Cross-Examination of Defense Witnesses

23        Similarly, if defendant calls a character witness, the

24   government should be allowed to cross examine that witness with

25   information pertaining to how the witness's opinion of defendant's

26   character would change if the witness were confronted with a

27   specific instance of defendant's conduct that rebuts that opinion.

28

A character witness who offers an opinion about or discusses defendant's reputation for good character on direct examination can be cross examined with relevant specific instances of conduct. Under Fed. R. Evid. 404(a)(2)(A), character evidence is admissible when offered by the prosecution to rebut "evidence of a pertinent trait" of character offered by a defendant.  See also Fed. R. Evid. 405(a).  "[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue." United States v. Mendoza-Prado, 314 F.3d 1099, 1105 (9th Cir. 2002) (quoting United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992)).  Such cross examination can be properly phrased in the form of "have you heard" or "did you know" questions regarding defendant's criminal conduct.  See United States v. Scholl, 166 F.3d 964, 974 (9th Cir. 1999).

### E.   Affirmative Defenses

Defendant has not given notice of any affirmative defenses or an intent to rely on any affirmative defense, including mental incapacity, entrapment, or duress, or an alibi defense, in response to the government's requests for such notice.  Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude the defendant from asserting such a defense.

### F.   Reciprocal Discovery

The government has requested reciprocal discovery, Jencks material, and expert disclosures from defendants in its discovery letters.  Defendant has yet to produce any reciprocal discovery to

which the government is entitled under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure or the Jencks Act.  Thus, to the extent defendant may attempt to introduce or use any documents at trial that have not been previously produced, the government reserves the right to object and to seek to have such documents precluded.

**II.  CONCLUSION**

The government respectfully requests leave to file such supplemental memoranda as may become necessary during trial.